05 CV 6992

LAW OFFICE OF SANDRA D. PARKER
645 Fifth Avenue, Suite 703
New York, NY 10022
Sandra D. Parker (SP 7024)
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
AUSTIN DURING,

                Plaintiff,

   -against-

CITY UNIVERSITY OF NEW YORK,
RICHARD SLAWSKI, Individually and as
Assistant Vice President of the Facilities
Department of City College of the City
University of New York, GERALD MILLER,
Individually and as Administrative Superintendent
of Physical Plant Services of the of City College
of the City University of New York, LOIS
CRONHOLN, Individually and as Vice President
and Chief Operating Officer of the City College
of the City University of New York,
GEORGE VARIAN, Individually and as
Supervisor of Mechanics of the City College of the
City University of New York,

                Defendants.
-----------------------------------------------------------------x

COMPLAINT AND
JURY DEMAND

(RCC)(RLE)



Plaintiff, Austin During, for his Complaint against the defendants, respectfully alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for declaratory judgment, injunctive relief and damages instituted against the defendants, for unlawful employment practices and employment

discrimination, based on plaintiff's race, ancestry and national origin, for retaliation and for subjecting plaintiff to a hostile work environment, pursuant to the Civil Rights Act of 1964 (as amended), 42 USC sec. 2000e et seq. (Title VII), the New York State Human Rights Law, NY Exec. L. sec. 290 et seq., and the New York City Human Rights Law, NYC Admin. Code sec. 8-107 et seq., to redress deprivation of plaintiff's rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution, pursuant to the Civil Rights Act of 1866 (as amended), 42 USC sec. 1981, the Civil Rights Act of 1871 (as amended), 42 USC sec. 1983, and for subjecting plaintiff to discriminatory treatment based on his age, in violation of NY Exec. L. sec. 290 et seq., and NYC Admin. Code sec. 8-107 et seq.

2. Jurisdiction over the subject matter of this Complaint is conferred on this Court pursuant to 28 USC sec. 1331, 28 USC sec. 1343, 42 USC sec. 2000e-5, 42 USC sec. 1981, and 42 USC sec. 1983. This Court's pendent jurisdiction is invoked pursuant to 28 USC 1367(a). Plaintiff further invokes this Court's jurisdiction pursuant to 28 USC sec. 2201 and 2202.

3. The venue of this action is properly placed in the Southern District of New York, pursuant to 28 USC sec. 1391, 42 USC sec. 2000e-5(f), as the defendants' principal place of business, and office where plaintiff works is located in this district, and plaintiff's claims arise in this district.

4. Plaintiff has satisfied all procedural requirements, prior to commencement

2

of this action. On or about April 19, 2005, plaintiff timely filed a complaint with the New York State Division of Human Rights (NYSDHR), alleging that defendants subjected him to discriminatory treatment, in the terms and conditions of employment, based on his race, ancestry and national origin, forced him to work in a hostile environment and retaliated against him. Pursuant to the Work Sharing Agreement between the NYSDHR and the Equal Employment Opportunity Commission (EEOC), NYSDHR accepted on behalf of the EEOC, plaintiff's charge for violation of Title VII of the Civil Rights Act, 29 USC sec. 2000e et seq.

5. On or about July 12, 2005, the NYSDHR dismissed plaintiff's charge for administrative convenience. On or about July 27, 2005, the EEOC issued to plaintiff a Dismissal and Notice of Rights.

## PARTIES

6. Plaintiff, Austin During is a black person of African ancestry and was born and raised in Sierra Leone, a country located on the West Coast of Africa. At all times relevant herein, plaintiff resided in Simpson, Pennsylvania.

7. Defendant City University of New York (sometimes referred to as CUNY) is a New York State urban educational institution, located in New York City, with its principal place of business located at 535 East 80th Street, New York, New York 10021.

8. Upon information and belief, defendant CUNY has established an Equal Opportunity Policy, which states among other things that CUNY is

committed to providing equal employment and educational opportunity to all persons without regard to race, color, religion, national or ethnic origin, age, gender and sexual orientation, . . . . alienage or citizenship . . . It is a violation of this policy for any member of the college community to engage in discrimination or to retaliate against a member of the community for raising an allegation of discrimination, filing a complaint alleging discrimination, or for participating in any proceeding to determine whether discrimination has occurred.

9. Plaintiff has been employed by CUNY and has been working at City College, since in or about February 1982.

10. Upon information and belief, City College of the City University of New York (City College), is one of the senior colleges within the CUNY educational system, located at 138th Street and Convent Avenue, New York, New York 10031.

11. At all times relevant herein plaintiff was and continues to be an 'employee' of the defendant City University of New York, within the meaning of 42 USC sec. 2000e(f), NY Exec. L. sec. 290 et seq., and NYC Admin. Code sec. 8-107 et seq.

12. At all times relevant herein, defendant City University of New York was and continues to be plaintiff's employer within the meaning of 42 USC sec. 2000e(b), NY Exec. L. sec. 290 et seq., and NYC Admin. Code sec. 8-107 et seq.

13. At all times relevant herein, Richard Slawski (Slawski) was the Assistant Vice President of the Facilities Department at City College.

14. At all times relevant herein, Gerald Miller (Miller) was the Administrative

Superintendent of City College's Physical Plant Services.

15. At all times relevant herein, Lois Cronholn (Cronholn) upon information and belief, was a Vice President and the Chief Operating Officer of City College.

16. At all times relevant herein George Varian (Varian) was employed at City College as Supervisor of Mechanics.

17. Defendant CUNY is sued for engaging in unlawful and discriminatory employment practices in violation of 42 USC 2000e et seq.

18. Defendants Slawski, Miller, Cronholn and Varian are sued in their respective official capacities as the Assistant Vice President of the Facilities Department at City College, Administrative Superintendent of City College's Physical Plant Services, Vice President and the Chief Operating Officer of City College, and as Supervisor of Mechanics, for depriving plaintiff of his civil rights in violation of 42 USC sec. 1981.

19. Defendants Slawski, Miller, Cronholn, and Varian are sued in their individual capacities, for depriving plaintiff of his civil rights in violation of 42 USC sec. 1983.

20. Defendants Slawski, Miller, Cronholn and Varian are sued in their individual capacities, for engaging in unlawful and discriminatory employment practices, in violation of NY Exec. L. sec. 290 et seq., and NYC Admin. Code sec. 8-107 et seq., and for depriving plaintiff of his civil rights in violation of 42 USC sec. 1981.

## FACTS

21. Plaintiff began working at City College in or about February 1982. Beginning in or about 1984 and continuing to the present, plaintiff has been subjected to discriminatory treatment, harassment, retaliation and has been forced to work in a hostile environment, because of his race, ancestry and national origin.

22. Plaintiff has filed at least four (4) formal complaints of discrimination against the CUNY and City College with the NYSDHR and the EEOC. Plaintiff filed his complaints in or about January 1987, in or about April 1989, in or about October 1999, and in or about January 2000. The above charges are the subject of a pending federal court lawsuit.

23. In the above complaints plaintiff alleges that CUNY and City College have been engaged in a continuing violation of his civil and employment rights, by denying him equal terms and conditions of employment, including repeatedly making disparaging remarks regarding his race, national origin and ancestry, lodging false and unsubstantiated charges of misconduct against him, threatening to take disciplinary measures against him, physically assaulting him, and denying him promotional opportunities.

24. Defendants' discriminatory treatment, harassment and retaliation of the plaintiff has continued unabated.

25. It is a violation of defendant CUNY's Equal Opportunity Policy, to subject plaintiff to discriminatory treatment, harassment and retaliation.

26. Defendants' discriminatory treatment, harassment and retaliation directed against the plaintiff violated defendant CUNY's Equal Opportunity Policy.

27. In 1997, plaintiff held the provisional position of Principal Custodial Supervisor, in City College's Department of Physical Plant Services, a non-civil service position. Plaintiff held that provisional position for approximately seven (7) years.

28. During those seven (7) years as provisional Principal Custodial Supervisor, plaintiff received two written evaluation. Both evaluations rated his performance as satisfactory or above satisfactory.

29. In or about 2002, plaintiff took and passed the civil service examination for the position of Principal Custodial Supervisor. Upon information and belief, on or about October 29, 2003 a list of candidates who passed the examination was published. Upon information and belief, of the eight (8) candidates appearing on the list, plaintiff achieved the highest score. On or about February 2004, Miller changed plaintiff's work schedule from the day to the night shift.

30. Prior to the change, plaintiff had worked from 9:00 a.m. to 5:30 p.m. As a result of the change in plaintiff's shift from day to night, plaintiff was required to work from 10:00 p.m. to 6:30 a.m. Upon information and belief plaintiff, and another black employee are the only Principal Custodial Supervisors who were required to work the night.

31. On or about March 12, 2004, plaintiff spoke to Miller regarding the civil

service opening for Principal Custodial Supervisor. Miller stated to plaintiff that he was not going to select him for the position, and that Slawski agreed with his decision not to select plaintiff.

32. Miller also made repeated statements that he was looking for 'young blood.'

33. Upon information and belief, Miller and Slawski's opposition to plaintiff selection was overruled by the Department of Human Resources, then headed by James Miller.

34. Over the objections of Miller and Slawski, on or about April 4, 2004, plaintiff was appointed to the civil service position of Principal Custodial Supervisor, in City College's Department of Physical Plant Services.

35. Miller, Slawski and others opposed plaintiff's selection based on his race, age, ancestry and nationality, and to retaliate against plaintiff for having charged them with engaging in discriminatory conduct and having complained about their discriminatory treatment.

36. Defendants required plaintiff to service a one (1) year probationary period, in the position of Principal Custodial Supervisor. If plaintiff successfully completed the probationary period, he would receive the permanent civil service appointment to the position.

37. Following his appointment, and during the entire probationary period, the defendants, embarked on a campaign of harassment and intimidation as part of their

design to use the probationary period, to create a false record of poor performance, and thereby justify their decision to deny plaintiff the permanent civil service position.

38. Having failed to block plaintiff's selection to the position, Miller with the complicity, approval and acquiescence of Slawski and Cronholn embarked on a campaign of fabricating issues regarding plaintiff's performance, to support their decision to deny him the permanent civil service appointment and demote plaintiff to the position of custodial supervisor, requiring him to report to employees who previously were plaintiff's subordinates.

39. Defendants discriminatory treatment included <u>inter alia</u>, assigning plaintiff to the night shift, thereby marginalizing his authority over his subordinates and in particular those subordinates assigned to the day shift, subjecting plaintiff to numerous performance reviews, which purported to rate plaintiff's performance as Principal Custodial Supervisor, but instead used evaluation criteria not related to the position, title or duties, falsely accusing plaintiff of poor performance or alleged misconduct, ignoring his recommendations for improvements, while attacking him for not making any recommendations, attacking plaintiff for not performing his duties, while depriving him of the required support, resources and personnel to do so, including denying him a key to the stock room, denying him an office from which to work, denying him a telephone, removing his file cabinet which contained critical files, encouraging his subordinates and others, including defendant Varian to deny plaintiff requested supplies and equipment to

complete assigned tasks, then citing plaintiff for alleged poor performance, when the tasks were not completed or not completed in a timely fashion.

40.     During the probationary period, defendants including Miller subjected plaintiff to a barrage of e-mails and alleged performance reviews, attacking every action plaintiff took with respect to the performance of his duties.  Defendants did not subject other employees to such a barrage of e-mails and alleged performance reviews during their probationary period.

41.     On or about April 4, 2005, pursuant to Miller's declared intent of blocking plaintiff's attainment of the permanent civil service position of Principal Custodial Supervisor, Miller with the acquiescence, approval and complicity of Slawski and Cronholn demoted plaintiff to the position of custodial supervisor, <u>three (3) titles or positions, below</u> the position plaintiff held since 1997, with an accompanying reduction in plaintiff's salary.

COUNT I AGAINST DEFENDANT
<u>CITY UNIVERSITY OF NEW YORK</u>

42.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 41 of this Complaint, with the same force and effect as if set forth herein.

43.     Defendant CUNY discriminated against plaintiff in the terms and conditions of his employment, subjected plaintiff to disparate treatment on the basis on his race, ancestry and national origin, forced plaintiff to work in a hostile environment and

10